## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOANNE SUCHY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil No.  15-1317-JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Joanne Suchy's application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[1]   Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms Defendant's decision.

## I.      Procedural History

On September 19, 2012, Plaintiff protectively applied for a period of disability and disability insurance benefits, alleging an onset date of February 1, 2007.   Plaintiff was last insured for disability insurance benefits on March 31, 2012.   Plaintiff's applications were denied initially and upon reconsideration; after a hearing, the ALJ issued a decision finding that Plaintiff was not disabled and the Appeals Council denied plaintiff's request for review.   Plaintiff then sought judicial review.

## II.     Standard for Judicial Review

---

[1]42 U.S.C. §§ 401–434.

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2]   The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]   In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.   Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6]   The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[7]   If the ALJ determines the claimant is disabled or not disabled at any step along the

---

[2] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[4] *Id.*

[5] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6] *Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[7] *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

2

way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[9] since February 1, 2007, the alleged onset date.   Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: mild cardiomegaly, mild asthma/chronic obstructive pulmonary disease (COPD), psoriasis, a history of seizures, and obesity.

But Plaintiff challenges the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC"), that included no manipulative limitations from her severe psoriasis, arguing that the ALJ erred in relying upon the opinion of state agency physician Dr. Wheeler who neither treated nor examined Plaintiff.

## IV.   Discussion

The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform less than the full range of medium work, and:

> could lift and carry up to 50 pounds occasionally and 25 pounds frequently.   She could stand or walk about 6 hours and sit for at least 6 hours out of an 8-hour workday.   She could perform tasks not involving the climbing of ladders, ropes, or scaffolding.   She could perform tasks not involving exposure to workplace hazards such as unprotected heights and dangerous moving machinery.   She could perform tasks not involving concentrated exposure to pulmonary irritants such as dust, gases, flumes, and smoke. She could perform tasks not involving operation of motorized vehicles or heavy equipment.

Plaintiff argues that the RFC is erroneous because it does not include any manipulative limitations.   Plaintiff claims, and testified at the ALJ hearing, that the severe psoriasis on her hands and associated pain affects her ability to grip and grasp objects, which is necessary for

---

[8]*Id.*

[9]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

medium work, and necessary for her past work as a food service supervisor, as well as the three jobs the vocational expert opined Plaintiff could do.

Plaintiff argues that the ALJ's erroneous RFC is the product of the ALJ erroneously according substantial weight to the opinion of Dr. Jeffrey Wheeler, a State agency medical consultant who found no such manipulative limitations.    According to Plaintiff, Dr. Wheeler's opinion is of dubious value because he opined that her eczema was not severe, when at step two, the ALJ found it to be a medically severe impairment.    Actually, at step two the ALJ found that Plaintiff had severe psoriasis, not eczema.[10]

Moreover, Dr. Wheeler did not opine that Plaintiff's psoriasis was not severe.    Rather, he opined that Plaintiff's psoriasis was not severe when it was appropriately treated with medication.    This opinion finds substantial support in the evidence.    In 2007, Plaintiff suffered from severe psoriasis, resulting in scaling and lesions on her hands.    But, the medical records evidence that once she started taking Methotextrate, which was prescribed by her treating physician Dr. John Robichaux, this condition significantly improved to the point that she had no lesions or scaling on her hands at all.    Dr. Robichaux treated Plaintiff until late 2007, but was unwilling to continue to prescribe Methotextrate until Plaintiff had a liver biopsy, as medically indicated for those taking this drug.    Plaintiff could not afford to take Methotextrate, and went untreated for the condition for several months in 2008.    Her condition worsened and

---

[10] Psoriasis is an inflammatory disease that manifests most commonly as well-circumscribed, erythematous papules and plaques covered with silvery scales; common triggers include trauma, infection, and certain drugs; symptoms are usually minimal with occasional mild itching, but cosmetic implications may be major. *See* Merck Sharp & Dohme Corp., *The Merck Manual of Diagnosis and Therapy* (*Merck*), 676 (19th ed. 2011). It is treated with topical and oral medications. *See id.* at 677. Eczema, a term often used interchangeably with dermatitis, is superficial inflammation of the skin characterized by redness, edema, oozing, crusting, scaling, pruritus, and sometimes vesicles; and arises from an interaction between genetic and environmental factors. *See Merck*, 663 (19th ed. 2011). It is treated with moisturizers, avoidance of allergic and irritant triggers, and often topical medication. *See id.* at 663-64.

Methotextrate was re-started in June 2008, such that her condition had significantly improved by a follow up visit in December 2008.   Plaintiff apparently went untreated again for some time between December 2008 and her next documented treatment on December 14, 2009. Unsurprisingly, the psoriasis had again worsened, as evidenced by photographs taken of her hands in November 2009.   At the December 2009 doctor's appointment, liver function labs were drawn, and the physician prescribed methotextrate again.   Thus, as of the time of Dr. Wheeler's opinion on March 16, 2010, the medical records evidence that while taking Methotextrate, Plaintiff's psoriasis improved, was well-controlled, and in fact, was asymptomatic, with no scaling or lesions.

After Dr. Wheeler's March 16, 2010 opinion, the medical record continued to evidence that Plaintiff's psoriasis improved and was asymptomatic, with no scaling or lesions when she was appropriately treated with medication.   From October 2010 to April 2011, Plaintiff was treated by Dr. Martha Housholder, a dermatologist, who prescribed topical and oral medications, and who noted significant improvement such that by September and December 2011, physicians noted that her skin was normal and without any rashes.

Notably, although Plaintiff testified that the psoriasis caused her pain and affected her ability to grip and grasp, there is no evidence in the longitudinal record of these complaints. None of Plaintiff's treating physicians noted any such complaints.   In fact, one of Plaintiff's treating physicians, Dr. Terrell, gave a medical source statement in which she opined that Plaintiff was able to "frequently" engage in fingering and manipulative movement with her hands.

In short, the ALJ's reliance on Dr. Wheeler's opinion was appropriate, for it, as well as

the ALJ's RFC, were supported by substantial evidence.   "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."[11]   Although a treating source provider's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, if it is "deficient in either respect, it is not entitled to controlling weight."[12]

In *Goatcher v. U.S. Dep't of Health & Human Services*,[13] the Tenth Circuit directed that the ALJ consider the following factors in determining what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[14]

Here , in evaluating Dr. Wheeler's opinion, the ALJ gave due weight to the applicable *Goatcher* factors, and well explained how Dr. Wheeler's opinion was supported by and consistent with other credible evidence in the record.   Indeed, the only evidence in the record

---

[11]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)).

[12]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374184, at *5 (July 2, 1996)).

[13]52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

[14]*Id.*

6

that Plaintiff's psoriasis was not well-controlled with medications was Plaintiff's testimony at the ALJ hearing that she suffered from pain and had limitations in her ability to grip and grasp objects.   In considering that testimony, the ALJ necessarily had to determine the credibility of Plaintiff's subjective complaint of pain, as well as her complaint about manipulative limitations. Credibility determinations are peculiarly the province of the finder of fact, and the court must not upset such determinations when supported by substantial evidence.[15]   As previously noted, there is no evidence supporting Plaintiff's testimony.   She never raised these complaints about pain and manipulative limitations to her treating providers; she never sought nor received pain medications.   And one of her treating providers, Dr. Terrell, specifically found that Plaintiff could frequently "finger" objects.   Thus, the ALJ properly discredited Plaintiff's testimony, for "'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"[16]

## V.   Conclusion

Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms Defendant's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: July 29, 2016

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[15]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations omitted).

[16]*Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).